## THE STATE OF KANSAS v. JAMES D. REEVES.

CRIMINAL LAW; *Official Oppression; Ignorance of Officer; Criminal Intent.* In a trial upon an information, under § 207 of the crimes act, against a justice of the peace, charging willful and malicious oppression, partiality, misconduct, and abuse of authority, "in requiring an excessive bond on an appeal from a judgment rendered by him, and in refusing to approve a surety on said bond who was in fact sufficient," it is error to instruct the jury that "gross ignorance of law in a case like this amounts to criminal intent."

*Appeal from Mitchell District Court.*

INFORMATION against *Reeves* for oppression and partiality in office. The facts are fully stated in the opinion. The defendant was convicted, at the March Term 1875 of the district court, and now brings the case to this court by appeal.

*A. J. Banta,* for appellant:

The verdict was contrary to the evidence, and to law. A crime cannot be carved out of the evidence. There must be *corruption* in office on the part of the justice, and it must be of the same character that would warrant the impeachment of a district judge, or other officer liable to impeachment: 1 Bish. Crim. Law, 5th ed., §§ 460, 462. There is no evidence at all, that is *proof* of corruption. One W. O. Smith offered as surety on appeal, and the justice did not think him sufficient. The bond was signed by the surety only. As he was pressed about it, the evidence shows that he inquired of others, and one justice of experience told him he would not take Smith, and another leading citizen told him the same thing; one person told him he thought Smith was good. The evidence, all taken together, simply shows a desire to do what is right, and it can be construed into nothing else.

The jury were misled by the instructions of the court, and must have thought that if the bond was in fact sufficient in

their opinion, then the defendant was guilty. The court mis-directed the jury in material matter of law. The court gave the following instructions, the defendant excepting: "Gross ignorance of law in a case like this *amounts to criminal intent.*" The effect of the court's instructions is, that if defendant was grossly careless or ignorant in the discharge of his official duties, then he is guilty, whether such carelessness or ignorance be in respect to law or fact. The instruction, above copied, states as a proposition of law that, as to the official acts of justices, gross ignorance on their part as to their duties is a crime. The language of the court is, "amounts to criminal intent;" but the court is kind enough to say to the jury that if they have "a reasonable doubt" of the gross ignorance of defendant they may acquit, impliedly saying if they had an abiding conviction of his ignorance, they must find guilty; and to make matters worse, the court leaves the jury to figure out the best they can what *gross* ignorance is. This is indeed strange law. The truth is, that in cases of this kind the gist of the offense is the *corrupt* mind of the justice. This mental condition the state must prove, and the burden is on the state at all stages of the trial; and where a mental condition is the gist of the offense, then ignorance or mistake as to law or facts does avail. 1 Bish. Crim. Law, 5th ed., §§ 297, 300. To be guilty, the justice must have known the law, and willfully, and with intent to oppress, refused to comply with it.

*G. W. Bertram*, county-attorney, for The State:

The evidence all goes to show that defendant Reeves was unwilling to have his action in the suit before him (as justice of the peace) reviewed by the district court. In the first place he refused to sign a bill of exceptions to his ruling as such justice, after having his attention repeatedly called to the law, and he even went so far as to tell the parties, as is shown from the evidence, that he could be compelled to sign the bill by a writ of mandamus, showing a willful determination not to do so, unless so compelled. A good and sufficient

bond on appeal was then offered, and he pretended not to be satisfied that the surety offered was a man of property, and demanded a certificate as to the ownership of land which the surety claimed. This was produced, showing a clear title to land, and still he was a "doubting Thomas," and wanted other names on bond, well knowing that the ten days would expire before they could be procured. If a party must get such names as a justice of the peace may dictate to an appeal bond, then the defendant is a model officer. A justice can require a surety to justify as to his property, and perhaps demand other evidence; but where such proof is furnished he has no alternative but to approve the bond. The evidence all shows that the defendant acted willfully. The instructions considered together are a fair charge, and there is nothing in them for the defendant to complain of. The one most prominent of those, is the one on "gross ignorance." See 1 Bouvier's Law Dict. 643, 679.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of Mitchell county upon an information charging "willful and malicious oppression, partiality, misconduct, and abuse of authority, in his official capacity of a justice of the peace," under § 207 of the crimes act, page 363 of Gen. Stat. That section reads: "Every person exercising or holding any office of public trust, who shall be guilty of willful and malicious oppression," etc. The facts as they appear were, that the defendant, a justice of the peace, after rendering a judgment against one Fred. E. Smith for $26.58 debt, and $13 costs, required a bond for appeal in the sum of $350, and refused to approve the surety offered. He claimed that he was advised by plaintiff's counsel, and so believed, that the bond must be large enough to cover costs in the district court, and that he was also advised by several disinterested parties that the surety offered was wholly insufficient. Upon the trial the court gave this instruction: "Gross ignorance of law, in a case like this, amounts to criminal intent." The same doc-

trine was recognized in several other instructions. Is this the law? If it is, it makes the office of a justice of the peace attendant with more dangers than is ordinarily supposed. These officers are seldom lawyers; they are chosen not on account of their knowledge of the law, but on account of their supposed good sense. It may be, and often is, that they are deplorably ignorant of the decisions of the courts, the accepted construction of statutes, and the well-settled rules of evidence and practice. They may be "grossly ignorant" as to these matters. Shall they, intending to do right, and exercising the best judgment they have, be punished criminally for their gross ignorance? Take this very case. The bond required was unnecessarily large, but the statute does not fix the amount. It says it shall be "in a sum not less than fifty dollars, nor less than double the amount of the judgment and costs." If the justice, on the suggestion of plaintiff's counsel, makes it large enough to cover the possible costs in the district court, or even larger than was necessary for that, and acts in good faith, shall he be punished criminally for his error? Or, if in the same good faith he rejects a surety, in fact good, but whom he believes from the information he has received to be insufficient, must he be fined, or sent to the county jail, for his error? We cannot think this is the law. The grossness of the error may be a circumstance tending to show an intent to do wrong, may perhaps in some cases be sufficient to sustain a finding of such intent; but that is as far as the law will go. It is a question of fact for the jury to determine whether the erroneous ruling indicates ignorance of the law, or an intent to do wrong. If the latter, it may be criminal. If the former, not. Gross ignorance is not, in a case like this, the equivalent of a criminal intent. It is, by the statute, only "willful and malicious" conduct, that renders a party guilty; and no matter how ignorant he may have been, or how grossly he may have erred, he has not violated the statute unless his acts were willfully and maliciously wrong. See *State v. McDonald*, 4 Harr. (Del.) 555; *State v. Porter*, 4 Harr. 556; *Common-*

*wealth v. Shed*, 1 Mass. 227; 1 Bishop Cr. Law, §§ 299, 320, 3d ed.; Wharton Am. Cr. Law, pp. 833, 836; *Clark v. Spicer*, 6 Kas. 440.

The judgment will be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.